

**Andrew J. Horowitz**

Direct Dial: (412) 288-2461
andrew.horowitz@obermayer.com
www.obermayer.com

**Obermayer Rebmann Maxwell & Hippel LLP**
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
P (412) 566-1500
F (412) 281-1530

June 17, 2024

The Honorable Matthew W. Brann
Chief Judge
United States District Court for the Middle District of Pennsylvania
Herman T. Schneebeli Federal Bldg. & U.S. Courthouse
240 West Third Street
Suite 218
Williamsport, PA 17701
**Via ECF**

      **RE:** *Heckman v. North Penn Comprehensive Health Services, et al* **- 4:20-cv-01680-MWB**

Dear Judge Brann:

      This letter is in response to Paragraph 2 of the Court's Order dated June 10, 2024 (Dkt. 164), which requests certain documents relating the Fed. R. Civ. P. 30(b)(6) deposition of North Penn that Plaintiff conducted on June 7, 2023. In accordance with said Order, the following documents are attached:

Exhibit 1:  Plaintiff's Rule 30(b)(6) Deposition Notice to North Penn (dated April 25, 2023);

Exhibit 2:  Email dated Friday June 2, 2023 at 7:47 PM, from North Penn's counsel to Plaintiff's counsel, attaching North Penn's Objections to Plaintiff's Rule 30(b)(6) Deposition Notice;

Exhibit 3:  North Penn's Objections to Plaintiff's Rule 30(b)(6) Deposition Notice (dated June 2, 2023);

Exhibit 4:  Email dated Friday June 2, 2023, at 8:06 PM, from Plaintiff's counsel responding to North Penn's counsel;

Exhibit 5:  Email dated Friday June 2, 2023, at 8:18 PM, from North Penn's counsel responding to Plaintiff's counsel;

Exhibit 6:  Email dated Friday June 2, 2023, at 8:23 PM, from North Penn's counsel further responding to Plaintiff's counsel;

Exhibit 7:  Email dated Friday June 2, 2023, at 8:35 PM, from Plaintiff's counsel responding to North Penn's counsel (article hyperlinked in the email also included);

4865-5033-7224

Exhibit 8:  Email dated Friday June 2, 2023, at 9:04 PM, from North Penn's counsel responding to Plaintiff's counsel;

Exhibit 9:  Email dated Friday June 2, 2023, at 9:42 PM, from Plaintiff's counsel responding to North Penn's counsel; and

Exhibit 10: Email date Wednesday June 2, 2023, at 11:08 AM, from Plaintiff's counsel to North Penn's counsel sent during the course of Plaintiff's Rule 30(b)(6) deposition of North Penn (including attached article regarding rules for Rule 30(b)(6) depositions.

Sincerely,

Andrew J. Horowitz, Esquire

CC: All counsel of record via ECF

4865-5033-7224

# **EXHIBIT 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW HECKMAN, | : | |
| | : | Electronically Filed |
| Plaintiff, | : | |
| | : | |
| v. | : | Docket No. 4:20-cv-01680-MWB |
| | : | |
| UPMC WELLSBORO, and NORTH | : | |
| PENN COMPREHENSIVE HEALTH | : | |
| SERVICES, and THE GREEN HOME, | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

### PLAINTIFF'S NOTICE OF DEPOSITION TO NORTH PENN COMPREHENSIVE HEALTH SERVICES

TO:   North Penn Comprehensive Health Services.

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. Pro. ("FRCP") 30(b)(6), Plaintiff will take the stenographic and video-recorded deposition of North Penn Comprehensive Health Services ("North Penn"), at 9:30 a.m. on May 25, 2023, at 1357 E College Ave, State College, PA 16801.

Pursuant to FRCP 30(b)(6), North Penn is required to designate and fully prepare one or more officers, directors, managing agents, or other persons who consent to testify on North Penn's behalf regarding matters known or reasonably available to North Penn regarding the following designated areas:

### MATTERS OF EXAMINATION

1.  North Penn's operational site visits (OSVs) by the U.S. Health Resources and Services Administration (HRSA) in 2018 and 2022, including but not limited to all representations made by North Penn in conjunction with the same regarding accessibility of OB services and the composition of North Penn's board, North Penn's relationship with UPMC, as

1

well as any concerns or criticisms expressed at any point and in any manner by the reviewers during the OSV process.

2. All analysis of issues surrounding access to healthcare for residents of the "Cowanesque Valley" region of Tioga County undertaken by North Penn during the time period 2015 to present, including but not limited to the scope, methodology, findings, outcome, and impetus for such analyses, and including but not limited to healthcare needs specific to obstetrics and prenatal care.

3. North Penn's policies and practices regarding procurement of services from third party providers, including but not limited to UPMC entities, applicable during the years 2016-2022, and North Penn's communications with HRSA and representations to HRSA regarding the same during that time period.

4. The history of North Penn's affiliation with Soldiers and Sailors Memorial Hospital, Laurel Health Network, and UPMC from the inception of North Penn to present. This includes, but is not limited to referral relationships, financial relationships, board relationships, agreements and/or understandings limiting competition between entities, and agreements and/or understandings allocating money-losing services between entities.

5. All negotiations leading to the 2018 staffing agreement between North Penn and UPMC Wellsboro, and all negotiations leading to the dissolution of the same.

6. All communications with HRSA regarding the 2018 staffing agreement between North Penn and UPMC Wellsboro, including but not limited to the purported approval of the same by HRSA.

7. All damages sustained by North Penn by Dr. Heckman's alleged breach of his restrictive covenant.

4873-8731-7596 v1

8.  The amounts of all loans allegedly due to North Penn by Dr. Heckman, and all amounts that were written off at any time by North Penn or UPMC Wellsboro, and any payments made between North Penn and UPMC Wellsboro relating to the same.

9.  Requests by North Penn to its board members to receive medical care from North Penn during the years 2016-2021.

10. The identities and dates of service of all North Penn board members who also served on the board of any UPMC entity, North Penn's position on whether such concurrent service posed a conflict of interest, and all efforts by North Penn to mitigate or manage such conflicts of interest. The time period applicable to this request is 2016-2021.

11. The identities and dates of service of all North Penn board officers who also served as officers of any UPMC entity, North Penn's position on whether such concurrent service posed a conflict of interest, and all efforts by North Penn to mitigate or manage such conflicts of interest. The time period applicable to this request is 2016-2021.

12. North Penn's use of and ability to use federal grant funds to pay physicians, physician assistants, and nurses, for the time period 2016 to 2021.

13. Representations in North Penn's IRS Form 990s regarding the composition of its board and affiliation with other organizations, for the years 2016 through 2021.

14. All effects on the finances of North Penn resulting from North Penn's cessation of obstetrics services in 2020.

15. North Penn's position on Dr. Heckman's efforts to renegotiate his contract in 2020 due to his loss of RVUs from performing obstetrics services.

16. All consideration given by North Penn to converting itself from a Federally Qualified Health Center to a Rural Health Center, from 2015 to present.

17. All efforts by North Penn to track the volume of referrals from North Penn providers to UPMC Wellsboro and other hospitals, from 2017 to 2021.

4873-8731-7596 v1

18. All efforts by North Penn to direct referrals from its providers to UPMC Wellsboro over other hospitals, from 2017 to 2021, and all requests (direct or implied) by any UPMC entity for the same.

PLEASE TAKE NOTICE that, pursuant to FRCP 34, within 30 days, North Penn shall provide written response, including any objections and/or claims of privilege, to Plaintiff's request for documents and tangible things identified in the following schedule of Documents, which are in the possession, custody or control of North Penn, its attorneys or other representatives or agents.

PLEASE TAKE NOTICE that, pursuant to FRCP 30(b)(2), Plaintiff requests that North Penn's designee, responsive to this deposition Notice, produce, at the time of the deposition, the documents identified in the following schedule of documents, unless such documents have already been produced as requested in Plaintiff's Requests for Production of Documents. "Documents" includes all items within the scope of FRCP 34(a)(1)(A).

### SCHEDULE OF DOCUMENTS

1. All documents used by North Penn's corporate representative(s) to prepare for this deposition.

2. All documents which refer to the specific areas of inquiry above.

PLEASE TAKE NOTICE that, these document requests are deemed continuing. Should you in the future discover any information relating to any of the above matters of inquiry, you are required to notify Plaintiff's counsel of this new or additional information by way of supplemental discovery response, pursuant to FRCP 26(e). Objection will be made at trial to the use of information not properly disclosed in accordance with the FRCP.

4873-8731-7596 v1

Respectfully Submitted,

Dated: April 25, 2023

**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**

*/s/Andrew J. Horowitz, Esq.*
Walter W. Cohen (Pa. ID No. 12097)
Bruce C. Fox (Pa. ID No. 42576)
Andrew J. Horowitz (Pa. ID No. 311949)
200 Locust Street, Ste. 400
Harrisburg, PA 17101
walter.cohen@obermayer.com
bruce.fox@obermayer.com
andrew.horowitz@obermayer.com
*Attorneys for Plaintiff Matthew Heckman*

5

4873-8731-7596 v1

# **EXHIBIT 2**

4865-5033-7224

## Horowitz, Andrew

| | |
|---|---|
| **From:** | Erin J. McLaughlin <erin.mclaughlin@bipc.com> |
| **Sent:** | Friday, June 2, 2023 7:47 PM |
| **To:** | Cohen, Walter; Horowitz, Andrew; Fox, Bruce; J. David Smith |
| **Cc:** | Christian Antkowiak; Robert A. Vernon; Katelyn M. O'Connor; Katie Cooper; Ellen Hagan; Erin J. McLaughlin |
| **Subject:** | Heckman v. North Penn |
| **Attachments:** | Objections to Plaintiff's 30(b)(6) deposition notice 4880-8788-3112 v.1.pdf |

Good evening,
Please see the objections to Plaintiff's Deposition Notice directed to North Penn.
Best,
Erin

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

# **<u>EXHIBIT 3</u>**

4865-5033-7224

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
**WILLIAMPORT DIVISION**

| | | |
|---|---|---|
| MATTHEW HECKMAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 4:20-cv-01680-MWB |
| v. | : | |
| | : | |
| UPMC WELLSBORO, NORTH | : | |
| PENN COMPREHENSIVE HEALTH | : | |
| SERVICES, and THE GREEN HOME, | : | |
| | : | |
| Defendants | : | |

---

**DEFENDANT NORTH PENN COMPREHENSIVE HEALTH SERVICES'**
**OBJECTIONS AND RESPONSES TO PLAINTIFF'S**
**NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)**

Defendant, North Penn Comprehensive Health Services ("North Penn"), by

its undersigned counsel, hereby provides the following witness designations and

objections to Plaintiff's Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6)

and aver as follows:

**GENERAL OBJECTIONS**

1.     North Penn objects to each of the Topics to the extent that they purport

to impose burdens and duties that exceed the scope of discovery permitted under the

Federal Rules of Civil Procedure, the Local Rules of this Court, or Court Order.

2.      North Penn objects to each of the Topics to the extent that they are vague, ambiguous, overbroad, unduly burdensome, premature, or fail to describe the information sought with the required reasonable particularity.

3.      North Penn objects to each of the Topics to the extent that they seek information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, or any other privilege or immunity.  In the event that there is an inadvertent disclosure of any such information during the course of the deposition, the provision of such information shall not be deemed a waiver of any privilege or immunity.

4.      None of the responses provided here or the testimony that may be provided are a concession of the relevance of the information sought.  North Penn expressly retains all applicable objections to the admission of any evidence obtained, including objections to competency, relevance, privilege, or other admissibility objections.

5.      North Penn reserves the right to amend or supplement its objections at any time, including during the deposition itself.

## **MATTERS FOR EXAMINATION**

1.      North Penn's operational site visits (OSVs) by the U.S. Health Resources and Services Administration (HRSA) in 2018 and 2022, including but not limited to all representations made by North Penn in conjunction with the same regarding

accessibility of OB services and the composition of North Penn's board, North Penn's relationship with UPMC, as well as any concerns or criticisms expressed at any point and in any manner by the reviewers during the OSV process.

**RESPONSE:**     In addition to its foregoing General Objections, North Penn objects to this noticed topic because it fails to describe the matters for examination with the required reasonable particularity. Fed. R. Civ. P. 30(b)(6). Specifically, the topic vaguely seeks information related to "operational site visits" by the U.S. Health Resources and Services Administration (HRSA) in 2018 and 2022, including "representations made by North Penn" regarding certain issues, without any further explanation or clarification. Furthermore, the last clause only serves to exacerbate the problem because it seeks "any concerns or criticisms expressed at any point and in any manner by the reviewers," which suffers from a host of issues. In addition to lacking the requisite reasonably particularity, it also requires North Penn to make judgment calls regarding what constitutes "concerns or criticisms" and it may also seek information known only to the reviewers and not in the possession, custody, or control of North Penn. Subject to and without waiving these objections, North Penn will provide testimony regarding the 2018 HRSA site visit as it relates to the relationship between North Penn and UPMC.

2.     All analysis of issues surrounding access to healthcare for residents of the "Cowanesque Valley" region of Tioga County undertaken by North Penn during the time period 2015 to present, including but not limited to the scope, methodology, findings, outcome, and impetus for such analyses, and including but not limited to healthcare needs specific to obstetrics and prenatal care.

**RESPONSE:**     In addition to its foregoing General Objections, North Penn objects to the second noticed topic because it fails to describe the matters for examination with the required reasonable particularity. Fed. R. Civ. P. 30(b)(6). Specifically, it seeks "[a]ll analysis of issues surrounding access to healthcare for residents" in certain parts of Tioga County that was undertaken by North Penn between 2015 and present. This topic is so broad as to be incapable of meaningful limitation. Plaintiff has not defined or set any limitation on the geographic scope of the "Cowanesque Valley," or what communities or specific regions Plaintiff

interprets as contained by such term.  Moreover, North Penn does not know what is meant by "analysis" or "issues surrounding access to healthcare."  As written, it would capture a swath of information, none of which is relevant to any claim or defense or otherwise proportional to the needs of the case.  Moreover, North Penn objects to the eight-year time period captured by this request.  According to Plaintiff's own allegations, North Penn was allegedly directed "to terminate its obstetrics services … [a]round July of 2019."  Complaint, ¶ 39 [ECF 1].  Subject to and without waiving these objections, North Penn will provide testimony regarding any analysis it has conducted regarding access to obstetric and prenatal care for residents in Tioga County between January 1, 2018 and December 31, 2020.

3.      North Penn's policies and practices regarding procurement of services from third party providers, including but not limited to UPMC entities, applicable during the years 2016- 2022, and North Penn's communications with HRSA and representations to HRSA regarding the same during that time period.

**RESPONSE:**      In addition to its foregoing General Objections, North Penn objects to the third noticed topic because it is overly broad, unduly burdensome, is not narrowly tailored to lead to the discovery of relevant evidence in this case and fails to describe the matters for examination with the required reasonable particularity.  Fed. R. Civ. P. 30(b)(6).  Specifically, it seeks both "policies and practices regarding procurement of services from third party providers" without limitation as well as "North Penn's communications with HRSA regarding the same."  Neither phrase is defined nor is there any specific parameters applied (e.g., statements made in grant applications).  As written, it would capture a swath of information, none of which is relevant to any claim or defense or otherwise proportional to the needs of the case.  Indeed, Plaintiff has alleged that North Penn was charged "above-market rates" for specific items: "information technology support, physician recruitment and credentialing, and building lease and maintenance."  Complaint, ¶ 33.  At the very least, this topic should be limited to the services that Plaintiff identified in his pleading.  Moreover, North Penn objects to the time period applied to this topic.  Subject to and without waiving these objections, North Penn will provide testimony regarding services provided by UPMC Wellsboro between January 1, 2017 (the year that Plaintiff became Medical Director, *see id.*) and December 31, 2020.

4.      The history of North Penn's affiliation with Soldiers and Sailors Memorial Hospital, Laurel Health Network, and UPMC from the inception of North Penn to present. This includes, but is not limited to referral relationships, financial relationships, board relationships, agreements and/or understandings limiting competition between entities, and agreements and/or understandings allocating money-losing services between entities.

**RESPONSE:**      In addition to its foregoing General Objections, North Penn objects to the fourth noticed topic because it is overly broad, unduly burdensome, is not narrowly tailored to lead to the discovery of relevant evidence in this case and fails to describe the matters for examination with the required reasonable particularity. Fed. R. Civ. P. 30(b)(6). Specifically, it seeks the "history of North Penn's affiliation with Soldiers and Sailors Memorial Hospital, Laurel Health Network, and UPMC." North Penn does not know what is meant by the "history of North Penn's affiliation" with the identified entities. North Penn objects that this request seeks information about "relationships," which is undefined and could constitute any manner of agreements or circumstances North Penn further objects to the topic because it seeks this vague information for the entirety of North Penn's corporate existence – notwithstanding that the allegations span less than a handful of years. Subject to and without waiving these objections, North Penn will provide testimony regarding applicable contractual agreements: the August 20, 2013 Affiliation Agreement between Susquehanna Health System and North Penn Comprehensive Health Services, Inc.; the August 28, 2012 Amended and Restated Affiliation Agreement between Susquehanna Health System and various entities including North Penn; the June 1, 2018 Services Agreement; and the June 1, 2018 Staffing Agreement between Soldiers and Sailors Memorial Hospital and North Penn.

5.      All negotiations leading to the 2018 staffing agreement between North Penn and UPMC Wellsboro, and all negotiations leading to the dissolution of the same.

**RESPONSE:**      In addition to its foregoing General Objections, North Penn objects to the fifth noticed topic because it fails to describe the matters for examination with the required reasonable particularity. Fed. R. Civ. P. 30(b)(6).

Specifically, it seeks "[a]ll negotiations leading to the 2018 staffing agreement between North Penn and UPMC Wellsboro" without limiting the topic to certain individuals or contractual terms.  It is not possible for North Penn to provide information regarding "[a]ll negotiations" that led to a certain contract.  Furthermore, negotiations unrelated to the conduct at issue is neither relevant nor proportional to the needs of the case.  Subject to and without waiving these objections, North Penn will provide testimony regarding the terms of the June 1, 2018 Staffing Agreement.

6.    All communications with HRSA regarding the 2018 staffing agreement between North Penn and UPMC Wellsboro, including but not limited to the purported approval of the same by HRSA.

**RESPONSE:**    In addition to its foregoing General Objections, North Penn objects to the sixth noticed topic because it is overly broad, unduly burdensome, is not narrowly tailored to lead to the discovery of relevant evidence in this case and fails to describe the matters for examination with the required reasonable particularity. Fed. R. Civ. P. 30(b)(6).  Specifically, it seeks "[a]ll communications with HRSA regarding the 2018 staffing agreement."  North Penn cannot reasonably identify all forms of communication between HRSA and any person or entity, possibly including persons or entities not affiliated with or controlled by North Penn, regarding unrestricted subject matter and numerous terms contained within the 2018 Staffing Agreement.  Subject to and without waiving these objections, North Penn will provide North Penn will provide testimony regarding the terms of the June 1, 2018 Staffing Agreement.

7.    All damages sustained by North Penn by Dr. Heckman's alleged breach of his restrictive covenant.

**RESPONSE:**    In addition to its foregoing General Objections, North Penn objects to the seventh noticed topic because it is overly broad, unduly burdensome, is not narrowly tailored to lead to the discovery of relevant evidence in this case in that North Penn has not asserted a claim against Plaintiff for an "alleged breach of his restrictive covenant."  North Penn objects that this topic seeks a legal conclusion regarding "[a]ll damages sustained by North Penn" following Plaintiff's breach of his contractual obligations.  As such, North Penn asserts that it is not obligated to produce a witness to testify regarding this topic.

8.      The amounts of all loans allegedly due to North Penn by Dr. Heckman, and all amounts that were written off at any time by North Penn or UPMC Wellsboro, and any payments made between North Penn and UPMC Wellsboro relating to the same.

**RESPONSE:**      In addition to its foregoing General Objections, North Penn objects to the eighth noticed topic to the extent that it seeks information in the possession, custody, or control of UPMC Wellsboro, not North Penn.  North Penn further objects to this topic because it seeks "payments made between North Penn and UPMC Wellsboro," which is impermissibly vague, not relevant to any claims or defenses asserted, and not proportional to the needs of the case.  Subject to and without waiving these objections, North Penn will provide testimony regarding the amounts that Plaintiff owes North Penn.

9.      Requests by North Penn to its board members to receive medical care from North Penn during the years 2016-2021.

**RESPONSE:**      In addition to its foregoing General Objections, North Penn objects to the ninth noticed topic because it fails to describe the matters for examination with the required reasonable particularity.  Fed. R. Civ. P. 30(b)(6).  North Penn objects that this topic seeks information that would violate the personal privacy rights of its board members.  To the extent that this request seeks information regarding medical care received by board members or anyone else, it impermissibly attempts to invade protected medical information belonging to third parties.  Not only is such information prohibited from disclosure, it is also well outside the scope of the claims or defenses asserted.  As such, North Penn asserts that it is not obligated to produce a witness to testify regarding this topic.

10.     The identities and dates of service of all North Penn board members who also served on the board of any UPMC entity, North Penn's position on whether such concurrent service posed a conflict of interest, and all efforts by North Penn

to mitigate or manage such conflicts of interest. The time period applicable to this request is 2016-2021.

**RESPONSE:** In addition to its foregoing General Objections, North Penn objects to this topic because it fails to describe the matters for examination with the required reasonable particularity. Fed. R. Civ. P. 30(b)(6). Amongst other issues, it does not limit this topic to the identification of board members who were serving concurrently on North Penn and a UPMC board. North Penn objects that this topic is overly broad and unduly burdensome in that it does not define what it means by a "UPMC entity." Moreover, to the extent that the topic seeks information regarding the service on the board of "any UPMC entity" and is not limited to UPMC Wellsboro, it seeks information not relevant to any claim or defense or proportional to the needs of the case. North Penn objects to the topic to the extent that it suggests that service on two boards would constitute a conflict of interest. Subject to and without waiving these objections, North Penn will provide information about its policies that address board members' conflict of interest as well as the names and dates of service of board members who served concurrently on both North Penn and UPMC Wellsboro's boards.

11. The identities and dates of service of all North Penn board officers who also served as officers of any UPMC entity, North Penn's position on whether such concurrent service posed a conflict of interest, and all efforts by North Penn to mitigate or manage such conflicts of interest. The time period applicable to this request is 2016-2021.

**RESPONSE:** In addition to its foregoing General Objections, North Penn objects to this topic because it fails to describe the matters for examination with the required reasonable particularity. Fed. R. Civ. P. 30(b)(6). Amongst other issues, it does not limit this topic to the identification of board members who were serving concurrently on North Penn's board and as an officer of any UPMC entity. North Penn objects that this topic is overly broad and unduly burdensome in that it does not define what it means by a "UPMC entity." Moreover, to the extent that the topic seeks information regarding the service as an officer of "any UPMC entity" and is not limited to UPMC Wellsboro, it seeks information not relevant to any claim or defense or proportional to the needs of the case. North Penn objects to the topic to

the extent that it suggests that service as an officer of a UPMC entity as well as North Penn's board would constitute a conflict of interest. Subject to and without waiving these objections, North Penn will provide information about its policies that address board members' conflict of interest as well as publicly disclosed information regarding persons who have served on North Penn's Board.

12    North Penn's use of and ability to use federal grant funds to pay physicians,

physician assistants, and nurses, for the time period 2016 to 2021.

**RESPONSE:**    In addition to its foregoing General Objections, North Penn objects that this topic is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence and fails to describe the matters for examination with the required reasonable particularity. Fed. R. Civ. P. 30(b)(6). North Penn does not know what is meant by its "use of and ability to use federal grant funds" to pay medical personnel. North Penn further objects to this request because it seeks information not relevant to any claim or defense or proportional to the needs of the case. Indeed, the compensation of other doctors or nurses has no bearing on Plaintiff's allegations. Furthermore, North Penn objects to this topic because it seeks compensation information of individuals who are not parties to this case. Subject to and without waiving these objections, North Penn will provide testimony only regarding its application for federal grant funding between 2017 and 2018, the years during which Plaintiff was employed by North Penn. For the avoidance of doubt, North Penn will not discuss the compensation or any other term and condition of employment of any other physician, physician assistant, or nurse.

13.    Representations in North Penn's IRS Form 990s regarding the composition

of its board and affiliation with other organizations, for the years 2016 through 2021.

**RESPONSE:**    In addition to its foregoing General Objections, North Penn objects that this topic is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence and fails to describe the matters for examination with the required reasonable particularity. Fed. R. Civ. P. 30(b)(6). Specifically, North Penn does not know what is meant by the "composition of its board" or "affiliation with other organizations." North Penn objects that the term "other organizations" is undefined, vague, and ambiguous, and presents no cognizable link to the subject of this litigation. Subject to and without waiving these

objections, North Penn will provide information related to disclosures in its Form 990s related to the identity of the members of its board of directors.

14.     All effects on the finances of North Penn resulting from North Penn's cessation of obstetrics services in 2020.

**RESPONSE:**     In addition to its foregoing General Objections, North Penn objects that this topic is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence and fails to describe the matters for examination with the required reasonable particularity.  Fed. R. Civ. P. 30(b)(6).  Specifically, the topic seeks "[a]ll effects" of the "cessation of obstetrics services in 2020" on "the finances of North Penn" which is incapable of meaningful limitation.  Subject to and without waiving these objections, North Penn will provide testimony regarding its decision to stop providing obstetrics services generally.

15.     North Penn's position on Dr. Heckman's efforts to renegotiate his contract in 2020 due to his loss of RVUs from performing obstetrics services.

**RESPONSE:**     In addition to its foregoing General Objections, North Penn objects to this topic because it fails to describe the matters for examination with the required reasonable particularity.  Fed. R. Civ. P. 30(b)(6).  Specifically, the topic seeks "North Penn's position" related to Plaintiff's "efforts to renegotiate his contract."  North Penn does not know what is meant by its "position."  As Plaintiff is aware, in 2018 his employment with North Penn terminated.  Effective June 1, 2018, Plaintiff was employed by UPMC Wellsboro pursuant to the Staffing Agreement between North Penn and UPMC Wellsboro.  Therefore, any efforts by Plaintiff to "renegotiate his contract" was solely between Plaintiff and UPMC Wellsboro.  As such, North Penn would not have a position on such efforts.

16.     All consideration given by North Penn to converting itself from a Federally Qualified Health Center to a Rural Health Center, from 2015 to present.

**RESPONSE:**     In addition to its foregoing General Objections,     North Penn objects to this topic because it fails to describe the matters for examination with the required reasonable particularity.  Fed. R. Civ. P. 30(b)(6).  Specifically, this topic is not limited in temporal scope to the time period of Plaintiff's employment by North Penn, or to the subject matter of this litigation.  North Penn objects that it is

an entity, and not an individual, and therefore itself is incapable of "consideration" of any particular subject matter.  Moreover, North Penn cannot reasonably identify whether "consideration" of any particular topic was made by any individual in some manner affiliated with North Penn.  Subject to and without waiving these objections, North Penn will provide testimony only regarding any discussions by its board of directors regarding conversion from a Federally Qualified Health Center to a Rural Health Center during the term of Plaintiff's employment by North Penn.

17.    All efforts by North Penn to track the volume of referrals from North Penn providers to UPMC Wellsboro and other hospitals, from 2017 to 2021.

**RESPONSE:**    In addition to its foregoing General Objections, North Penn objects to this topic because it fails to describe the matters for examination with the required reasonable particularity.  Fed. R. Civ. P. 30(b)(6).  North Penn also objects to the extent that it assumes that efforts were made to "track the volume of referrals from North Penn providers to UPMC Wellsboro and other hospitals."  Finally, North Penn objects to the extent that the request seeks information related to "other hospitals" who are not parties to this litigation because it is not relevant to the claims or defenses or proportional to the needs of the case.  Subject to and without waiving these objections, North Penn will provide information regarding its referral policy generally.

18.    All efforts by North Penn to direct referrals from its providers to UPMC Wellsboro over other hospitals, from 2017 to 2021, and all requests (direct or implied) by any UPMC entity for the same.

**RESPONSE:**    In addition to its foregoing General Objections, North Penn objects to this topic because it fails to describe the matters for examination with the required reasonable particularity.  Fed. R. Civ. P. 30(b)(6).  North Penn also objects to the extent that it assumes that North Penn directed referrals from its providers to UPMC Wellsboro over other hospitals or was requested to do so.  Subject to and without waiving these objections, North Penn will provide information regarding its referral policy generally.

## SCHEDULE OF DOCUMENTS

1.    All documents used by North Penn's corporate representative(s) to prepare for this deposition.

**RESPONSE:**    In addition to its foregoing General Objections, North Penn objects to this request for documents to the extent that it seeks information protected by the work-product doctrine, attorney-client privilege, or any other privilege or immunity.  North Penn objects that this Request is duplicative of prior discovery efforts in this case to the extent that it seeks the production of documents that were previously disclosed by any party through the course of discovery of this matter.  Subject to and without waiving these objections, to the extent that any document is identified by North Penn's representative during the course of his deposition of this matter that has not been previously disclosed in discovery, counsel for North Penn will meet and confer with counsel for Plaintiff as to the discoverability and potential production of said documents.

2.    All documents which refer to the specific areas of inquiry above.

**RESPONSE:**    In addition to its foregoing General Objections, North Penn objects to this request for documents because it is overly broad, not proportional to the needs of the case, and seeks information not relevant to the claims or defenses asserted as set forth more fully in response to each and every noticed topic.  North Penn objects that this Request is duplicative of prior discovery efforts in this case to the extent that it seeks the production of documents that were previously disclosed by any party through the course of discovery of this matter.  North Penn has produced documents in response to Plaintiff's document requests and will supplement those responses as appropriate.  To the extent that any document is identified by North Penn's representative during the course of his deposition of this matter that has not been previously disclosed in discovery, counsel for North Penn will meet and confer with counsel for Plaintiff as to the discoverability and potential production of said documents.  If Plaintiff seeks additional documents, it should issue targeted document requests for those documents.

Dated:  June 2, 2023

Respectfully Submitted,

BUCHANAN INGERSOLL & ROONEY PC

*/s/ Erin J. McLaughlin*

Christian Antkowiak (PA 209231)
Erin J. McLaughlin (PA 202044)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
christian.antkowiak@bipc.com
erin.mclaughlin@bipc.com

*Attorneys for Defendant North Penn
Comprehensive Health Services*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the within

DEFENDANT NORTH PENN COMPREHENSIVE HEALTH SERVICES'

OBJECTIONS AND RESPONSES TO PLAINTIFF'S NOTICE OF DEPOSITION

PURSUANT TO FED. R. CIV. P. 30(b)(6) was served via email on June 2, 2023

upon the following:

Walter W. Cohen
Bruce C. Fox
Andrew J. Horowitz
Obermayer Rebmann Maxwell & Hippel LLP
200 Locust Street, Ste. 400
Harrisburg, PA 17101-1508
walter.cohen@obermayer.com
bruce.fox@obermayer.com
andrew.horowitz@obermayer.com

*Attorneys for Plaintiff,*
*Matthew Heckman*


J. David Smith
Austin White
McCormick Law Firm
835 West Fourth Street
Williamsport, PA  17701
dsmith@mcclaw.com
awhite@mcclaw.com

*Attorneys for UPMC Wellsboro*
*and The Green Home*


/s/Erin J. McLaughlin
Erin J. McLaughlin

# EXHIBIT 4

## Horowitz, Andrew

| | |
|---|---|
| **From:** | Horowitz, Andrew |
| **Sent:** | Friday, June 2, 2023 8:06 PM |
| **To:** | Erin J. McLaughlin; Cohen, Walter; Fox, Bruce; J. David Smith |
| **Cc:** | Christian Antkowiak; Robert A. Vernon; Katelyn M. O'Connor; Katie Cooper; Ellen Hagan |
| **Subject:** | RE: Heckman v. North Penn |

Erin,

There are a few problems here. First and foremost, we have properly served North Penn with a notice of deposition, and to the extent that you believe that any of the topics are improper, then it is incumbent on North Penn to seek a protective order. Otherwise, your objections have no effect, and any failure by North Penn to respond to the topics as we drafted them would be, in effect, a failure to appear for a properly noticed deposition and would be sanctionable. We do not agree to limit the topics as you propose, and will instead be asking questions based on the topics as we drafted them.

Moreover, we provided you with this notice of deposition on April 25, and nonetheless you are raising these objections at 7:47 PM on the Friday before the Wednesday deposition, while I am on vacation.

**Andrew J. Horowitz, Esquire**
Partner

**Obermayer Rebmann Maxwell & Hippel LLP**
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
412.288-2461 tel | 412.281.1530 fax
andrew.horowitz@obermayer.com | www.obermayer.com

**From:** Erin J. McLaughlin <erin.mclaughlin@bipc.com>
**Sent:** Friday, June 2, 2023 7:47 PM
**To:** Cohen, Walter <walter.cohen@obermayer.com>; Horowitz, Andrew <Andrew.Horowitz@obermayer.com>; Fox, Bruce <bruce.fox@obermayer.com>; J. David Smith <dsmith@mcclaw.com>
**Cc:** Christian Antkowiak <christian.antkowiak@bipc.com>; Robert A. Vernon <robert.vernon@bipc.com>; Katelyn M. O'Connor <katelyn.oconnor@bipc.com>; Katie Cooper <katherine.cooper@bipc.com>; Ellen Hagan <ellen.hagan@bipc.com>; Erin J. McLaughlin <erin.mclaughlin@bipc.com>
**Subject:** Heckman v. North Penn

Good evening,
Please see the objections to Plaintiff's Deposition Notice directed to North Penn.
Best,
Erin

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

# **<u>EXHIBIT 5</u>**

4865-5033-7224

**Horowitz, Andrew**

| | |
|---|---|
| **From:** | Erin J. McLaughlin <erin.mclaughlin@bipc.com> |
| **Sent:** | Friday, June 2, 2023 8:18 PM |
| **To:** | Horowitz, Andrew |
| **Cc:** | Cohen, Walter; Fox, Bruce; J. David Smith; Christian Antkowiak; Robert A. Vernon; Katelyn M. O'Connor; Katie Cooper; Ellen Hagan |
| **Subject:** | Re: Heckman v. North Penn |

Andrew,

That is actually not the procedure and there is no required period for me to serve the objections.  You can file a motion to compel, which we will oppose, as your topics are improper.

Erin McLaughlin
Shareholder
Buchanan Ingersoll & Rooney PC
(412) 392-2090
(412) 860-0417

On Jun 2, 2023, at 8:05 PM, Horowitz, Andrew <Andrew.Horowitz@obermayer.com> wrote:

Erin,

There are a few problems here. First and foremost, we have properly served North Penn with a notice of deposition, and to the extent that you believe that any of the topics are improper, then it is incumbent on North Penn to seek a protective order. Otherwise, your objections have no effect, and any failure by North Penn to respond to the topics as we drafted them would be, in effect, a failure to appear for a properly noticed deposition and would be sanctionable. We do not agree to limit the topics as you propose, and will instead be asking questions based on the topics as we drafted them.

Moreover, we provided you with this notice of deposition on April 25, and nonetheless you are raising these objections at 7:47 PM on the Friday before the Wednesday deposition, while I am on vacation.

**Andrew J. Horowitz, Esquire**
Partner

**Obermayer Rebmann Maxwell & Hippel LLP**
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
412.288.2461 tel | 412.281.1530 fax
andrew.horowitz@obermayer.com | www.obermayer.com

**From:** Erin J. McLaughlin <erin.mclaughlin@bipc.com>
**Sent:** Friday, June 2, 2023 7:47 PM
**To:** Cohen, Walter <walter.cohen@obermayer.com>; Horowitz, Andrew <Andrew.Horowitz@obermayer.com>; Fox, Bruce <bruce.fox@obermayer.com>; J. David Smith <dsmith@mcclaw.com>
**Cc:** Christian Antkowiak <christian.antkowiak@bipc.com>; Robert A. Vernon

<robert.vernon@bipc.com>; Katelyn M. O'Connor <katelyn.oconnor@bipc.com>; Katie Cooper <katherine.cooper@bipc.com>; Ellen Hagan <ellen.hagan@bipc.com>; Erin J. McLaughlin <erin.mclaughlin@bipc.com>
**Subject:** Heckman v. North Penn

Good evening,
Please see the objections to Plaintiff's Deposition Notice directed to North Penn.
Best,
Erin

---

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

---

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

# **EXHIBIT 6**

4865-5033-7224

## Horowitz, Andrew

| | |
|---|---|
| **From:** | Erin J. McLaughlin <erin.mclaughlin@bipc.com> |
| **Sent:** | Friday, June 2, 2023 8:23 PM |
| **To:** | Horowitz, Andrew |
| **Cc:** | Cohen, Walter; Fox, Bruce; J. David Smith; Christian Antkowiak; Robert A. Vernon; Katelyn M. O'Connor; Katie Cooper; Ellen Hagan |
| **Subject:** | Re: Heckman v. North Penn |

By way of further response, I am happy to confer with you about the objections to see if we can find a middle ground.

Erin McLaughlin
Shareholder
Buchanan Ingersoll & Rooney PC
(412) 392-2090
(412) 860-0417

On Jun 2, 2023, at 8:05 PM, Horowitz, Andrew <Andrew.Horowitz@obermayer.com> wrote:

Erin,

There are a few problems here. First and foremost, we have properly served North Penn with a notice of deposition, and to the extent that you believe that any of the topics are improper, then it is incumbent on North Penn to seek a protective order. Otherwise, your objections have no effect, and any failure by North Penn to respond to the topics as we drafted them would be, in effect, a failure to appear for a properly noticed deposition and would be sanctionable. We do not agree to limit the topics as you propose, and will instead be asking questions based on the topics as we drafted them.

Moreover, we provided you with this notice of deposition on April 25, and nonetheless you are raising these objections at 7:47 PM on the Friday before the Wednesday deposition, while I am on vacation.

**Andrew J. Horowitz, Esquire**
Partner

**Obermayer Rebmann Maxwell & Hippel LLP**
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
412.288-2461 tel | 412.281.1530 fax
andrew.horowitz@obermayer.com | www.obermayer.com

**From:** Erin J. McLaughlin <erin.mclaughlin@bipc.com>
**Sent:** Friday, June 2, 2023 7:47 PM
**To:** Cohen, Walter <walter.cohen@obermayer.com>; Horowitz, Andrew <Andrew.Horowitz@obermayer.com>; Fox, Bruce <bruce.fox@obermayer.com>; J. David Smith <dsmith@mcclaw.com>
**Cc:** Christian Antkowiak <christian.antkowiak@bipc.com>; Robert A. Vernon <robert.vernon@bipc.com>; Katelyn M. O'Connor <katelyn.oconnor@bipc.com>; Katie Cooper <katherine.cooper@bipc.com>; Ellen Hagan <ellen.hagan@bipc.com>; Erin J. McLaughlin

1

<erin.mclaughlin@bipc.com>
**Subject:** Heckman v. North Penn

Good evening,
Please see the objections to Plaintiff's Deposition Notice directed to North Penn.
Best,
Erin

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

# <u>EXHIBIT 7</u>

4865-5033-7224

## Horowitz, Andrew

| | |
|---|---|
| **From:** | Horowitz, Andrew |
| **Sent:** | Friday, June 2, 2023 8:35 PM |
| **To:** | Erin J. McLaughlin |
| **Cc:** | Cohen, Walter; Fox, Bruce; J. David Smith; Christian Antkowiak; Robert A. Vernon; Katelyn M. O'Connor; Katie Cooper; Ellen Hagan |
| **Subject:** | RE: Heckman v. North Penn |

Erin,

See https://www.markowitzherbold.com/Preparing-and-Responding-to-the-Rule-30-b-6-Notice for an article describing the procedure. Your objections do not abrogate North Penn's obligation to respond to our topics—only an agreement of counsel or a protective order can do that.

That said, I'm happy to discuss the topics with you and see if we can work out these issues. I'm wide-open on Monday, so let me know when works for you. Thanks.

**Andrew J. Horowitz, Esquire**
Partner

**Obermayer Rebmann Maxwell & Hippel LLP**
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
412.288-2461 tel | 412.281.1530 fax
andrew.horowitz@obermayer.com | www.obermayer.com

---

**From:** Erin J. McLaughlin <erin.mclaughlin@bipc.com>
**Sent:** Friday, June 2, 2023 8:23 PM
**To:** Horowitz, Andrew <Andrew.Horowitz@obermayer.com>
**Cc:** Cohen, Walter <walter.cohen@obermayer.com>; Fox, Bruce <bruce.fox@obermayer.com>; J. David Smith <dsmith@mcclaw.com>; Christian Antkowiak <christian.antkowiak@bipc.com>; Robert A. Vernon <robert.vernon@bipc.com>; Katelyn M. O'Connor <katelyn.oconnor@bipc.com>; Katie Cooper <katherine.cooper@bipc.com>; Ellen Hagan <ellen.hagan@bipc.com>
**Subject:** Re: Heckman v. North Penn

By way of further response, I am happy to confer with you about the objections to see if we can find a middle ground.

Erin McLaughlin
Shareholder
Buchanan Ingersoll & Rooney PC
(412) 392-2090
(412) 860-0417

On Jun 2, 2023, at 8:05 PM, Horowitz, Andrew <Andrew.Horowitz@obermayer.com> wrote:

Erin,

There are a few problems here. First and foremost, we have properly served North Penn with a notice of deposition, and to the extent that you believe that any of the topics are improper, then it is incumbent on North Penn to seek a protective order. Otherwise, your objections have no effect, and any failure by North Penn to respond to the topics as we drafted them would be, in effect, a failure to appear for a properly noticed deposition and would be sanctionable. We do not agree to limit the topics as you propose, and will instead be asking questions based on the topics as we drafted them.

Moreover, we provided you with this notice of deposition on April 25, and nonetheless you are raising these objections at 7:47 PM on the Friday before the Wednesday deposition, while I am on vacation.

**Andrew J. Horowitz, Esquire**
Partner

**Obermayer Rebmann Maxwell & Hippel LLP**
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
412.288.2461 tel | 412.281.1530 fax
andrew.horowitz@obermayer.com | www.obermayer.com

---

**From:** Erin J. McLaughlin <erin.mclaughlin@bipc.com>
**Sent:** Friday, June 2, 2023 7:47 PM
**To:** Cohen, Walter <walter.cohen@obermayer.com>; Horowitz, Andrew <Andrew.Horowitz@obermayer.com>; Fox, Bruce <bruce.fox@obermayer.com>; J. David Smith <dsmith@mcclaw.com>
**Cc:** Christian Antkowiak <christian.antkowiak@bipc.com>; Robert A. Vernon <robert.vernon@bipc.com>; Katelyn M. O'Connor <katelyn.oconnor@bipc.com>; Katie Cooper <katherine.cooper@bipc.com>; Ellen Hagan <ellen.hagan@bipc.com>; Erin J. McLaughlin <erin.mclaughlin@bipc.com>
**Subject:** Heckman v. North Penn

Good evening,
Please see the objections to Plaintiff's Deposition Notice directed to North Penn.
Best,
Erin

---

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

---

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

Case 4:20-cv-01680-MWB    Document 165    Filed 06/17/24    Page 37 of 59

![MARKOWITZ HERBOLD PC]

Article

# PREPARING AND RESPONDING TO THE RULE 30(B)(6) NOTICE

Authors: David B. Markowitz and Joseph Franco



The Rule 30(b)(6) deposition is the process by which a litigant may depose a corporation or other business entity. While it is impossible for a corporation to be deposed in the literal sense, the corporation must designate one or more representatives who will testify on its behalf.

The 30(b)(6) discovery device is being increasingly utilized by litigants because of its unique features.  For instance, the testimony of a 30(b)(6) witness is binding upon the company, regardless of the designee's personal knowledge of the subject matter or relationship to the company.  *Great Am. Ins, Co. of N.Y. v. Vegas Const. Co.,* 251 F.R.D. 534, 538 (D.Nev. 2008).  The designee must also be prepared with all information reasonably available to the company on the topics specified in the deposition notice.  *Bd. Of Tr. of the Leland Stanford Junior Univ. v. Tyco Int'l Ltd.,* 253 F.R.D. 524, 526 (C.D. Cal. 2008)(holding that Rule 30(b)(6) explicitly requires an organization to have persons testify on its behalf as to all matters known or reasonably available to it

and, therefore, implicitly requires persons to review all matters known or reasonably available to it in preparation for the deposition).  Further, sanctions are frequently imposed if a witness has been inadequately prepared.  Most frequently these sanctions are monetary, but they may event take the form of evidence preclusion.  *Great Am. Ins, Co. of N.Y.,* at 542-543 (D.Nev. 2008)(discussing the range of typical sanctions); *Pacificorp v. Northwest Pipeline GP,* 2012 WL 613155, *14 (D.Or. 2012)(requiring the corporate deponent to adequately prepare its witness and pay the legal fees associated with a second 30(b)(6) deposition); *Elan Microelectronics Corp. v. Pixcir Microelectronics Co. Ltd.*, 2013 WL 4101811, 8-9 (D.Nev. Aug. 13, 2013)(ordering preclusion of evidence as a sanction for having failed to adequately prepare a rule 30(b)(6) deponent).

With binding testimony, an obligation to thoroughly prepare, and sanctions readily available to redress a failure in preparation – it is hardly a surprise that use of 30(b)(6) depositions is on the rise.  Yet, the ability to take advantage of these benefits hinges upon the existence of a proper Rule 30(b)(6) notice.  A deficient notice will often trigger a motion for protective order, but even if it does not, it can give the deponent an argument that its otherwise shoddy preparation was adequate given the lack of clarity in the notice.  This article discusses considerations in properly drafting, as well as responding to, a Rule 30(b)(6) notice.

**I.       Considerations in Drafting the Rule 30(b)(6) Notice**

**A.       Issue One 30(b)(6) Notice per Business Entity**

A common mistake for a lawyer issuing a 30(b)(6) notice is to assume that because there is no limit on the number of topics, there is also no limit on the number of times you can notice and take the deposition of a corporation.  That is not so.  The "one bite at the apple" rule applies to Rule 30(b)(6) depositions.

Several courts have considered whether Rule 30(a)(2)(A)(ii), which requires leave of court before taking a deposition of the same person twice, applies with the same force to corporate defendants.  Numerous courts have held that the "one bite at the apple" rule applies to corporations just as it does to natural persons.

"The policy against permitting a second deposition of an already-deposed deponent is equally applicable to depositions of individuals and organizations. Taking serial depositions of a single corporation may be as costly and burdensome, if not more so, as serial depositions of an individual. In both cases, each new deposition requires the deponent to spend time preparing for the deposition, traveling to the deposition, and providing testimony. In addition, allowing for serial depositions, whether of an individual or organization, provides the deposing party with an unfair strategic advantage, offering it multiple bites at the apple, each time with better information than the last."

*State Farm Mut. Auto Ins. Co. v. New Horizont, Inc.,* 254 FRD 227, 233-235 (E.D. Penn. 2008).  *See also In re Sulfuric Acid Antitrust Litigation,* 2005 WL 1994105, *2 (N.D. Ill. 2005); *Groupion, LLC v. Groupon, Inc.,* 2012 WL 359699, *5-6 (N.D. Cal. 2012).  These cases stand for the proposition that if a party notices and takes a 30(b)(6) deposition at an early stage of a case, that party will not automatically be able to notice and take another 30(b)(6) deposition on different topics later in the case.

The result in these cases suggests that preparing one, comprehensive Rule 30(b)(6) deposition notice with all potential topics is the best practice.  If in response to such a notice the corporation has to designate several witnesses, it will still be counted as only one deposition.  *New Horizont, Inc.*, at 233-235 (citing the Advisory Committee Notes to the 1993 amendments to Rule 30(a)(2)(A)).  Once a consolidated notice is prepared, the parties can decide if certain topics should be covered at an early stage of the case, and others at a later stage.

**B. The Topics Must Be Described with "Reasonable Particularity."**

Rule 30(b)(6) provides that the noticing party "must describe with reasonable particularity the matters for examination."  Fed.R.Civ.P. 30(b)(6).  While the question whether a particular topic has been stated with "reasonable particularity" will depend on the particular facts of each case, some courts have more generally interpreted the phrase to mean "painstaking specificity."  *Kalis v. Colgate-Palmolive Co.*, 241 F.3d 1049, 1057, Fn 5 (7th Cir. 2000) *citing Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D.Minn.2000) ("[T]he requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute.").

In addition to definitional refinements like "painstaking specificity," courts have also provided express examples of pitfalls to avoid.  The most overarching prohibition is: "Where...the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible."  *Reed v. Bennett,* 193 F.R.D. 689, 692 (D.Kan. 2000).  Accordingly, a notice must avoid phrases such as "including but not limited to."  Such a topic would put the corporation to the impossible task of preparing for an open-ended, and theoretically infinite subject.  *Id.*  Where possible, the 30(b)(6) notice should "be limited to a relevant time period, geographic scope, and related to claims" that are at issue in the case.  *Young v. United Parcel Serv. of Am., Inc.,* 2010 WL 1346423, *9 (D.Md. Mar. 30, 2010).

The text of the rule and above authorities make clear that it is better to err on the side of greater specificity when issuing a Rule 30(b)(6) notice.  This is particularly so because there is no set limit for 30(b)(6) topics.  In one recent case, a district court permitted 50 topics:

"At first blush, the number of topics raises the question of whether the notices are unduly burdensome.  Upon closer examination, the large number of topics results from the fact that Plaintiff was quite specific in her topic

descriptions.  Plaintiff could have grouped them into a smaller number of topics while still meeting her duty under Rule 30(b)(6) to describe the areas of testimony with reasonable particularity.  The deposition notices are not unduly burdensome, oppressive or harassing based on the number of identified topic areas."

*Tamburri v. SunTrust Mortg. Inc.*, 2013 WL 1616106, at *2 (N.D. Cal. April 15, 2013).  Courts frequently allow 30 or more topics.  *See e.g. Krasney v. Nationwide Mut. Ins. Co.,* 2007 WL 4365677, *4 (D.Conn. Dec. 11, 2007)(upholding 35 of 40 topics).

There are far more benefits than detriments to articulating your 30(b)(6) topics with a high degree of specificity.  For instance, in *Tamburri*, the court held that 50 topics were not unreasonable, in part, because of the great specificity of the topics.  Highly specific topics will also deny any refuge to an unprepared witness.  There will be no legitimate argument that the topic was ambiguous, so when the unprepared witness cannot answer, sanctions of some kind will be more likely.

## II.    Obtaining Protection from an Improper Notice.

As a practical matter, the responsibility for ensuring that the Rule 30(b)(6) notice is sufficiently specific and clear rests as much with the prospective deponent as it does with the noticing party.  No lawyer should permit her client to spend hours of unnecessary time preparing for deposition based upon a vague 30(b)(6) notice.  No lawyer should expose her client to potential sanctions when the client inevitably cannot answer all questions that theoretically fall within an overly broad and open-ended topic.  If upon reviewing the 30(b)(6) notice lawyer and client cannot ascertain what must be done to prepare, or, if preparation would be overly burdensome because of the unreasonable breadth of the topic, the lawyer should confer and then move for a protective order if necessary.

It is a common misperception – even among seasoned lawyers – that serving written objections to a

30(b)(6) notice is sufficient to protect the client from an improper notice. It is not. Such objections are essentially useless. "The proper procedure to object to a Rule 30(b)(6) deposition notice is not to serve objections on the opposing party, but to move for a protective order." *Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 406 (E.D.N.C. 2014). A corporate deponent cannot simply make "objections and then provide a witness that will testify only within the scope of its objections." *Id.* "Unlike the procedure with respect to interrogatories, requests for production of documents and requests for admissions, there is no provision in the rules which provides for a party whose deposition is noticed to serve objections so as to be able to avoid providing the requested discovery until an order compelling discovery is issued." *New England Carpenters Health Benefits Fund v. First Databank, Inc*., 242 F.R.D. 164, 165-166 (D.Mass. 2007).

The first step in protecting the prospective deponent from an improper 30(b)(6) notice is to confer with opposing counsel in an attempt to clarify or limit the objectionable topics. For this purpose, written objections may certainly serve as a starting point. The defending lawyer should push for as much clarity and precision as possible, as that will enable the prospective deponent to engage in focused preparation and will also decrease the chance that the witness will be unprepared.

If conferring with opposing counsel does not result in a proper 30(b)(6) notice, then moving for a protective order under Rule 26(c) is the only reasonable option. Fed. R. Civ. P. 26(c). The motion may seek to have the entire notice quashed, or to have specific topics modified or quashed. If the notice generally lacks specificity or is otherwise replete with defects that are susceptible to correction, then courts often quash the entire notice and provide leave for the notice to be re-issued consistent with the court's opinion. *See Murphy v. Kmart Corp.*, 255 F.R.D. 497, 518 (D.S.D. 2009); *Reed v. Bennett,* 193 F.R.D. 689, 693 (D.Kan. 2000); *Gulf Production Co. Inc. v. Hoover Oilfield Supp., Inc.,* 2011 WL 2669294 (E.D. Louisiana 2011). If, however, the protective order is being sought on grounds

that cannot readily be cured with an amended notice – then the court may quash the notice in its entirety, and without leave to re-issue the notice.  *See SEC v. Buntrock,* 217 F.R.D. 441, 444, 448 (N.D.Ill. 2003)(quashing a 30(b)(6) notice which was "an inappropriate attempt to depose opposing counsel...").  If only specific topics are problematic, then consider moving to quash only those specific topics in the hope that they will be excised from the notice without leave to re-issue them in a modified form. *See e.g. Chechele v. Ward,* 2012 WL 4383405, *4 (W.D.Okl. Sept. 25, 2012).



**MARKOWITZ HERBOLD**

1455 SW Broadway, Suite 1900
Portland, OR 97201 - 503-295-3085

© 2024 Markowitz Herbold PC - All Rights Reserved

# EXHIBIT 8

4865-5033-7224

## Horowitz, Andrew

| | |
|---|---|
| **From:** | Erin J. McLaughlin <erin.mclaughlin@bipc.com> |
| **Sent:** | Friday, June 2, 2023 9:04 PM |
| **To:** | Horowitz, Andrew |
| **Cc:** | Cohen, Walter; Fox, Bruce; J. David Smith; Christian Antkowiak; Robert A. Vernon; Katelyn M. O'Connor; Katie Cooper; Ellen Hagan |
| **Subject:** | Re: Heckman v. North Penn |

Thanks, Andrew.  How about 4 pm?  Enjoy the rest of your vacation.

Erin McLaughlin
Shareholder
Buchanan Ingersoll & Rooney PC
(412) 392-2090
(412) 860-0417

On Jun 2, 2023, at 8:44 PM, Horowitz, Andrew <Andrew.Horowitz@obermayer.com> wrote:

Erin,

See https://www.markowitzherbold.com/Preparing-and-Responding-to-the-Rule-30-b-6-Notice for an article describing the procedure. Your objections do not abrogate North Penn's obligation to respond to our topics—only an agreement of counsel or a protective order can do that.

That said, I'm happy to discuss the topics with you and see if we can work out these issues. I'm wide-open on Monday, so let me know when works for you. Thanks.

**Andrew J. Horowitz, Esquire**
Partner

**Obermayer Rebmann Maxwell & Hippel LLP**
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
412.288-2461 tel | 412.281.1530 fax
andrew.horowitz@obermayer.com | www.obermayer.com

**From:** Erin J. McLaughlin <erin.mclaughlin@bipc.com>
**Sent:** Friday, June 2, 2023 8:23 PM
**To:** Horowitz, Andrew <Andrew.Horowitz@obermayer.com>
**Cc:** Cohen, Walter <walter.cohen@obermayer.com>; Fox, Bruce <bruce.fox@obermayer.com>; J. David Smith <dsmith@mcclaw.com>; Christian Antkowiak <christian.antkowiak@bipc.com>; Robert A. Vernon <robert.vernon@bipc.com>; Katelyn M. O'Connor <katelyn.oconnor@bipc.com>; Katie Cooper <katherine.cooper@bipc.com>; Ellen Hagan <ellen.hagan@bipc.com>
**Subject:** Re: Heckman v. North Penn

By way of further response, I am happy to confer with you about the objections to see if we can find a middle ground.

1

Erin McLaughlin
Shareholder
Buchanan Ingersoll & Rooney PC
(412) 392-2090
(412) 860-0417

On Jun 2, 2023, at 8:05 PM, Horowitz, Andrew <Andrew.Horowitz@obermayer.com>
wrote:

Erin,

There are a few problems here. First and foremost, we have properly served North Penn
with a notice of deposition, and to the extent that you believe that any of the topics are
improper, then it is incumbent on North Penn to seek a protective order. Otherwise,
your objections have no effect, and any failure by North Penn to respond to the topics
as we drafted them would be, in effect, a failure to appear for a properly noticed
deposition and would be sanctionable. We do not agree to limit the topics as you
propose, and will instead be asking questions based on the topics as we drafted them.

Moreover, we provided you with this notice of deposition on April 25, and nonetheless
you are raising these objections at 7:47 PM on the Friday before the Wednesday
deposition, while I am on vacation.

**Andrew J. Horowitz, Esquire**
Partner

**Obermayer Rebmann Maxwell & Hippel LLP**
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
412.288-2461 tel | 412.281.1530 fax
andrew.horowitz@obermayer.com | www.obermayer.com

**From:** Erin J. McLaughlin <erin.mclaughlin@bipc.com>
**Sent:** Friday, June 2, 2023 7:47 PM
**To:** Cohen, Walter <walter.cohen@obermayer.com>; Horowitz, Andrew
<Andrew.Horowitz@obermayer.com>; Fox, Bruce <bruce.fox@obermayer.com>; J.
David Smith <dsmith@mcclaw.com>
**Cc:** Christian Antkowiak <christian.antkowiak@bipc.com>; Robert A. Vernon
<robert.vernon@bipc.com>; Katelyn M. O'Connor <katelyn.oconnor@bipc.com>; Katie
Cooper <katherine.cooper@bipc.com>; Ellen Hagan <ellen.hagan@bipc.com>; Erin J.
McLaughlin <erin.mclaughlin@bipc.com>
**Subject:** Heckman v. North Penn

Good evening,
Please see the objections to Plaintiff's Deposition Notice directed to North Penn.
Best,
Erin

2

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

# __EXHIBIT 9__

**Horowitz, Andrew**

| | |
|---|---|
| **From:** | Horowitz, Andrew |
| **Sent:** | Friday, June 2, 2023 9:42 PM |
| **To:** | Erin J. McLaughlin |
| **Cc:** | Cohen, Walter; Fox, Bruce; J. David Smith; Christian Antkowiak; Robert A. Vernon; Katelyn M. O'Connor; Katie Cooper; Ellen Hagan |
| **Subject:** | RE: Heckman v. North Penn |

Thanks, Erin. Call me then at 412-328-7836.

**Andrew J. Horowitz, Esquire**
Partner

**Obermayer Rebmann Maxwell & Hippel LLP**
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
412.288-2461 tel | 412.281.1530 fax
andrew.horowitz@obermayer.com | www.obermayer.com

**From:** Erin J. McLaughlin <erin.mclaughlin@bipc.com>
**Sent:** Friday, June 2, 2023 9:04 PM
**To:** Horowitz, Andrew <Andrew.Horowitz@obermayer.com>
**Cc:** Cohen, Walter <walter.cohen@obermayer.com>; Fox, Bruce <bruce.fox@obermayer.com>; J. David Smith <dsmith@mcclaw.com>; Christian Antkowiak <christian.antkowiak@bipc.com>; Robert A. Vernon <robert.vernon@bipc.com>; Katelyn M. O'Connor <katelyn.oconnor@bipc.com>; Katie Cooper <katherine.cooper@bipc.com>; Ellen Hagan <ellen.hagan@bipc.com>
**Subject:** Re: Heckman v. North Penn

Thanks, Andrew. How about 4 pm? Enjoy the rest of your vacation.

Erin McLaughlin
Shareholder
Buchanan Ingersoll & Rooney PC
(412) 392-2090
(412) 860-0417

On Jun 2, 2023, at 8:44 PM, Horowitz, Andrew <Andrew.Horowitz@obermayer.com> wrote:

Erin,

See https://www.markowitzherbold.com/Preparing-and-Responding-to-the-Rule-30-b-6-Notice for an article describing the procedure. Your objections do not abrogate North Penn's obligation to respond to our topics—only an agreement of counsel or a protective order can do that.

That said, I'm happy to discuss the topics with you and see if we can work out these issues. I'm wide-open on Monday, so let me know when works for you. Thanks.

1

**Andrew J. Horowitz, Esquire**
Partner

**Obermayer Rebmann Maxwell & Hippel LLP**
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
412.288.2461 tel | 412.281.1530 fax
andrew.horowitz@obermayer.com | www.obermayer.com

---

**From:** Erin J. McLaughlin <erin.mclaughlin@bipc.com>
**Sent:** Friday, June 2, 2023 8:23 PM
**To:** Horowitz, Andrew <Andrew.Horowitz@obermayer.com>
**Cc:** Cohen, Walter <walter.cohen@obermayer.com>; Fox, Bruce <bruce.fox@obermayer.com>; J. David Smith <dsmith@mcclaw.com>; Christian Antkowiak <christian.antkowiak@bipc.com>; Robert A. Vernon <robert.vernon@bipc.com>; Katelyn M. O'Connor <katelyn.oconnor@bipc.com>; Katie Cooper <katherine.cooper@bipc.com>; Ellen Hagan <ellen.hagan@bipc.com>
**Subject:** Re: Heckman v. North Penn

By way of further response, I am happy to confer with you about the objections to see if we can find a middle ground.

Erin McLaughlin
Shareholder
Buchanan Ingersoll & Rooney PC
(412) 392-2090
(412) 860-0417

> On Jun 2, 2023, at 8:05 PM, Horowitz, Andrew <Andrew.Horowitz@obermayer.com> wrote:

Erin,

There are a few problems here. First and foremost, we have properly served North Penn with a notice of deposition, and to the extent that you believe that any of the topics are improper, then it is incumbent on North Penn to seek a protective order. Otherwise, your objections have no effect, and any failure by North Penn to respond to the topics as we drafted them would be, in effect, a failure to appear for a properly noticed deposition and would be sanctionable. We do not agree to limit the topics as you propose, and will instead be asking questions based on the topics as we drafted them.

Moreover, we provided you with this notice of deposition on April 25, and nonetheless you are raising these objections at 7:47 PM on the Friday before the Wednesday deposition, while I am on vacation.

**Andrew J. Horowitz, Esquire**
Partner

**Obermayer Rebmann Maxwell & Hippel LLP**
525 William Penn Place, Suite 1710

Pittsburgh, PA 15219
412.288.2461 tel | 412.281.1530 fax
andrew.horowitz@obermayer.com | www.obermayer.com

---

**From:** Erin J. McLaughlin <erin.mclaughlin@bipc.com>
**Sent:** Friday, June 2, 2023 7:47 PM
**To:** Cohen, Walter <walter.cohen@obermayer.com>; Horowitz, Andrew <Andrew.Horowitz@obermayer.com>; Fox, Bruce <bruce.fox@obermayer.com>; J. David Smith <dsmith@mcclaw.com>
**Cc:** Christian Antkowiak <christian.antkowiak@bipc.com>; Robert A. Vernon <robert.vernon@bipc.com>; Katelyn M. O'Connor <katelyn.oconnor@bipc.com>; Katie Cooper <katherine.cooper@bipc.com>; Ellen Hagan <ellen.hagan@bipc.com>; Erin J. McLaughlin <erin.mclaughlin@bipc.com>
**Subject:** Heckman v. North Penn

Good evening,
Please see the objections to Plaintiff's Deposition Notice directed to North Penn.
Best,
Erin

---

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

---

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

---

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

# **<u>EXHIBIT 10</u>**

4865-5033-7224

## Horowitz, Andrew

| | |
|---|---|
| **From:** | Horowitz, Andrew |
| **Sent:** | Wednesday, June 7, 2023 11:08 AM |
| **To:** | Erin J. McLaughlin; J. David Smith; Fox, Bruce; Cohen, Walter |
| **Subject:** | Article regarding instruction not to answer at 30(b)(6) depositions |
| **Attachments:** | TrialTechniquesTactics_February_2018.pdf |

See attached. This is a good distillation of the rules on this issue. Your instructions not to answer are improper.

Thank you.

Andrew J. Horowitz, Esquire

Partner

Obermayer Rebmann Maxwell & Hippel LLP
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
412.288-2461 tel | 412.281.1530 fax
andrew.horowitz@obermayer.com | www.obermayer.com



# IADC COMMITTEE NEWSLETTER

## TRIAL TECHNIQUES AND TACTICS

### FEBRUARY 2018

### IN THIS ISSUE

*This article analyzes case law regarding questions posed to a Rule 30(b)(6) witness that are beyond the scope of the Rule 30(b)(6) notice.  It also provides practical tips regarding witness preparation and appropriate objections to address the inevitable beyond-the-scope question. At the end of the article, follow the trial trip and learn to achieve homeostasis in your trial preparation.*

# Questions Outside the Scope in a Rule 30(b)(6) Deposition

### ABOUT THE AUTHOR



**Jim King** is a partner with the law firm of Porter, Wright, Morris & Arthur LLP in Columbus, Ohio.  Jim's practice centers on commercial and business litigation in courts throughout Ohio and the Midwest.  He can be reached at jking@porterwright.com.

### ABOUT THE COMMITTEE

The Trial Techniques and Tactics Committee promotes the development of trial skills and assists in the application of those skills to substantive areas of trial practice.  Learn more about the Committee at www.iadclaw.org.

To contribute a newsletter article, contact:



**Bryant J. Spann**
Vice Chair of Publications
Thomas Combs & Spann, PLLC
bspann@tcspllc.com

*The **International Association of Defense Counsel** serves a distinguished, invitation-only membership of corporate and insurance defense lawyers. The IADC dedicates itself to enhancing the development of skills, professionalism and camaraderie in the practice of law in order to serve and benefit the civil justice system, the legal profession, society and our members.*

*w: www.iadclaw.org    p: 312.368.1494    f: 312.368.1854    e: mmaisel@iadclaw.org*

Rule 30(b)(6) of the Federal Rules of Civil Procedure permits a party to depose a corporation, government agency, or other entity on discrete subject matters described with particularity in a deposition notice. The named entity must then designate one or more persons (such as officers or directors) to testify on behalf of the entity on the listed subjects. A problem that often surfaces in a Rule 30(b)(6) deposition is questioning on matters that fall outside the subjects identified in the deposition notice. If a witness is asked about something that is not within the scope of the subject matters for which the witness has been designated, must the witness answer the question or is the questioning limited to the subjects in the notice? And what is proper for the defending lawyer to do when her witness is asked a question outside the scope? This article discusses how courts have resolved this problem.

One of the first decisions to address this question was *Paparelli v. Prudential Insurance Company of America*, 108 F.R.D. 727 (D. Mass. 1985). In *Paparelli*, the court strictly construed the scope of a Rule 30(b)(6) deposition:

> Accordingly, I rule that if a party opts to employ the procedures of Rule 30(b)(6), F.R.Civ.P., to depose the representative of a corporation, that party must confine the examination to the matters stated "with reasonable particularity" which are contained in the Notice of Deposition.

*Id*. at 730. Although the *Paparelli* court limited the examination to the subject matter of the designation in the notice, the court held that a defending party should not instruct the witness not to answer, but instead should adjourn the deposition immediately and seek a protective order. *Id*. at 731.

Since *Paparelli*, however, every court that has considered the issue has refused to limit Rule 30(b)(6) questioning to the designated subject matters. *See, e.g., Philbrick v. eNom, Inc.*, 593 F.Supp.2d 352 (D.N.H. 2009); *Cabot Corp. v. Yamulla Enters., Inc.,* 194 F.R.D. 499 (M.D. Pa. 2000); *Overseas Private Inv. Corp. v. Mandelbaum*, 185 F.R.D. 67 (D.D.C. 1999); *King v. Pratt & Whitney*, 161 F.R.D. 475 (S.D. Fla. 1995). For example, in *Detoy v. City & County of San Francisco*, 196 F.R.D. 362 (N.D. Ca. 2000), the court criticized *Paparelli* for "ignor[ing] the liberal discovery requirements" of the then-existing Rule 26(b)(1). "Limiting the scope of a 30(b)(6) deposition to what is noticed in the deposition subpoena frustrates the objectives of Rule 26(b)(1) whenever a deposition party seeks information relevant to the subject matter of the pending litigation that was not specified." *Id*. at 366. The court, therefore, concluded that "*Paparelli* forecloses the deposing party from two of the most significant benefits of the deposition as a tool in the discovery process: (1) the ability to explore previously undisclosed areas of a case that are revealed by a deponent during deposition questioning; and (2) the ability to observe a deponent's response to an unexpected question." *Id*. Even though the scope of discovery under Rule 26(b)(1) has narrowed since the *Detoy* ruling, recent decisions have continued to reject the *Paparelli's* limitations on Rule 30(b)(6) depositions. *See Kuennen v. Wright Med. Tech., Inc.*, No. C14-2045, 2015 U.S. Dist. LEXIS 23485, at *8-9 n.6 (D. Iowa Feb. 25, 2015).

- 3 -
**TRIAL TECHNIQUES AND TACTICS COMMITTEE NEWSLETTER**
*February 2018*

Other than the general scope of discovery in Rule 26(b)(1), the only limitation on the scope of a Rule 30(b)(6) deposition is the rule's "reasonable particularity" requirement. As one court explained, the responding party's obligation to designate a witness to testify "extends only so far as the party issuing the deposition has honored its own obligation to 'describe with reasonable particularity the matters for the examination.'" *Philbrick*, 593 F.Supp.2d at 363. A party producing a witness about information known or knowable to the entity "does not vouch for his or her ability to speak to other matters." *Id*. "[I]f the deponent does not know the answer to the questions outside the scope of the matters described in the notice, then that is the examining party's problem." *King*, 161 F.R.D. at 476.

In short, Rule 30(b)(6) cannot be used to limit what is asked of the designated witness. If the witness is able to answer on the subjects described with "reasonable particularity," the witness has satisfied the rule's minimum standards. From there, the deposition's scope is determined solely by the standards of relevance under Rule 26.

So what should counsel do in preparing and defending a corporate representative on the scope of questioning? First, of course, the witness needs to be prepared to testify on the listed subject matters. Failure may subject the responding party to sanctions. *King*, 161 F.R.D. at 476. Second, the witness should be prepared to testify as an individual on those subjects he or she is competent to testify. Then, at the deposition itself, if the witness is asked a question outside the scope of the subjects in the notice, "counsel shall state the objection on the record and the witness shall answer the question, to the best of the witness's ability." *Detoy*, 196 F.R.D. at 367. Counsel will need to be attentive and vigilant to ensure the objection is made to a question outside the scope. But, in the absence of a need to preserve privilege, enforce a limitation on discovery imposed by the court, or to present a motion for protective order for reasons other than the question's scope, counsel should refrain from instructing the witness not to answer. *Id*.

w: *www.iadclaw.org*    p: 312.368.1494    f: 312.368.1854    e: *mmaisel@iadclaw.or*g

- 4 -
**TRIAL TECHNIQUES AND TACTICS COMMITTEE NEWSLETTER**
*February 2018*

# TRIAL TIP: HOMEOSTASIS
## BY: MARGARET FONSHELL WARD

We generally believe that the best way to go into trial is to think about the necessary preparation. Instead of merely getting ready, though, think of your preparation as a plan to reach the condition of **homeostasis**. A product of the Greek *homoios* (similar) and *stasis* (stillness), the typical modern definition is "a relatively stable state of equilibrium or a tendency toward such a state between different but interdependent elements."

A trial is nothing if not an amalgam of "different but interdependent elements." All at once, the trial lawyer must be meeting the needs and directives of the client, the witnesses, the law, the judge, the schedule, and the adversary, to reach the single intended result of a favorable verdict. Lose sight or control of one of these and the cracks appear and gradually become larger, or cause crisis, chaos and stress as the attorney attempts to correct course.

The physiologist, Walter Cannon, addressing homeostasis in the body, wrote: "Constancy in an open system, such as our bodies represent, requires mechanisms that act to maintain this constancy. Homeostasis does not occur by chance, but is the result of organized self-government." Similarly, homeostasis in trial does not happen by chance, but only by the self-imposed rigor of organization and preparation. Each component of that preparation should take account of and incorporate the needs of each of the interdependent element.

In practice this means, for instance, examining the relationship you have had with adversary counsel and making specific decisions about how you will approach her during the trial. Then go further by telling the client the decision, explaining the approach to each witness you will call, making a decision about specifically how you will communicate the relationship to the court, and creating a list of each legal, evidentiary, and scheduling issue that will need to be coordinated with the counsel and the plan for doing so.

Next is to apply the same method on the judge. Research what you need to know. Tell the client and witnesses everything you learn. Discuss what you know about the judge with adversary counsel to reach agreement about joint advances where beneficial to the administration of the case. Put all exhibits, legal issues, and logistics into the form the court expects.

Move to the exhibits. Examine each in full for its necessity and intended use. Create a note for each exhibit that identifies how you would explain its importance to the client and the witness through whom it will be entered. Note the anticipated questions or objections from the court and counsel and set forth the responses. Attach the exhibit specifically to the issue it supports or negates.

w: *www.iadclaw.org*    p: 312.368.1494    f: 312.368.1854    e: *mmaisel@iadclaw.or*g



**TRIAL TECHNIQUES AND TACTICS COMMITTEE NEWSLETTER**
*February 2018*

Now the witnesses, both yours and the adversary's. Introduce each to the client, literally or figuratively. Does the client know and understand exactly what each will do? To the extent possible without crossing ethical boundaries, introduce them to one another. Make a note that identifies each witness's relationship to the evidence, the legal point to be made, and the goal of the case. Note the legal and evidentiary objections that may arise. Consider and make decisions on handling the likely reaction of the court, jury, and counsel to the personality, appearance, and substance of the witness.

Create a logistics diagram. What equipment and supplies will you need? How will it all get there? What is the anticipated schedule for trial, not just overall but each day and portion of the day? What kind of courtroom does the judge run? What will be the role of the courtroom clerks? Who will be on call to address unanticipated changes or demands? Once the diagram is created, discuss any joint concerns with counsel, show the diagram to your client, and notify witnesses of that relevant to them.

Now the legal issues, now the facts, now the opening and closing arguments. You get the picture – every element of the case and trial must incorporate every other element and constituency. This is, without question, an extraordinary amount of work. It takes time and manpower.  The benefit, though, is the homeostasis that makes for the most successful trial possible – one that unfolds with "a relatively stable state of equilibrium." It cannot guarantee you will win the case but it can guarantee that you and all concerned know that you had it under control and were able to adapt as necessary without chaos or disaster.

**THINK IADC FIRST**

**TRIAL TECHNIQUES AND TACTICS COMMITTEE NEWSLETTER**
*February 2018*

**Past Committee Newsletters**

Visit the Committee's newsletter archive online at www.iadclaw.org to read other articles published by the Committee. Prior articles include:

JANUARY 2018
The Mistrust of Science in the Age of Alternative Facts
Kirstin Abel

NOVEMBER 2017
I'm Thinking of a Number
Brian A. O'Connell

SEPTEMBER 2017
Lawyers Sanctioned for Prematurely Terminating Deposition
Carl A. Aveni

AUGUST 2017
Scientific Literature in the Courtroom
Jim King

JULY 2017
A Trial Lawyer's Guide to Effective Legal Writing
Chris Kenney

MARCH 2017
Defending Damages Claims Involving Foreign Plaintiffs
Kurt B. Gerstner

JANUARY 2017
Ethical Issues for Defense Counsel: The Tri-Partite Relationship
R. Matthew Cairns

NOVEMBER 2016
Other Purposes: Admissibility of Evidence of Insurance under Federal Rule of Evidence 411
Brian O'Connell

MAY 2016
If it's Not in the Record, it Never Happened: Preserving the Record on Appeal
Emily Coughlin

MARCH 2016
The Art and Science of Closing Arguments
Chris Kenney

JANUARY 2016
Say Goodbye To the "Ancient Documents" Rule
James King

Thinking Outside the Box: A Review of Innovations in Trial Practice
Chris Kenney

NOVEMBER 2015
Too Late to Remove?  Maybe Not…
Michael Zullo