IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW HECKMAN, | No. 4:20-CV-01680 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| NORTH PENN COMPREHENSIVE HEALTH SERVICES and UPMC WELLSBORO, | |
| Defendants. | |

MEMORANDUM OPINION

DECEMBER 4, 2025

Three days of a scheduled five-day trial have been completed. At the conclusion of Plaintiff's case-in-chief, Defendants North Penn and UPMC Wellsboro moved, under Rule 50(a), for Judgment as a Matter of Law. For the reasons stated below, the motions are granted. Trial may continue with Defendant North Penn's case-in-chief related only to their counterclaim for breach of contract.

I.   BACKGROUND

Plaintiff Dr. Matthew Heckman ("Heckman") brought suit against Defendants North Penn Comprehensive Health Services ("North Penn") and UPMC Wellsboro ("UPMC") (collectively, "Defendants") for a variety of claims related to his time employed by Defendants.[1]

---

[1] Doc. 16 (Amend. Compl.).

In addition, as part of this litigation, North Penn brought a counterclaim against Heckman and his then wife, Bethany Hanbach (formerly Bethany Heckman) ("Hanbach"), for breach of contract related to the non-repayment of a Loan Agreement instituted at the inception of Heckman's employment for North Penn.[2] Heckman asserts three affirmative defenses to this dispute: 1) Performance Under the Contract Prevented by the Other Party; 2) the Unclean Hands doctrine, and; 3) Unlawful Penalty.[3]

After a lengthy summary judgment decision, North Penn's breach of contract claim survived, while only one of Heckman's claims against Defendants remained: Count IV, Retaliation Under the Fair Labor Standards Act, 29 U.S.C.§ 215(a)(3) ("FLSA"). Parties proceeded to trial on these two issues. Now, at the close of Heckman's case-in-chief, Defendants have moved for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(a). For the reasons stated below, and as noted above, the Court will grant this motion.

## II.   DISCUSSION

### A.   Standard of Review

With respect to a Federal Rule of Civil Procedure 50 motion, that Rule provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary

---

[2]  Doc. 78 (Amend. Ans.).
[3]  Doc. 81 (Amend. Ans.); Doc. 217 (Pretrial Memo.) at 6.

basis to find for the party on that issue, the court may . . . grant a motion for judgment as a matter of law against the party."[4] The United States Court of Appeals for the Third Circuit has held that "[a] motion for judgment as a matter of law under rule 50(a) will be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law."[5]

In deciding this question, the Court "may not weigh evidence, determine the credibility of witnesses or substitute [its] version of the facts for that of the jury."[6] Stated differently, "[w]here there is conflicting evidence that could reasonably lead to inconsistent inferences, the court may not direct a verdict predicated on its determination that some witnesses were more credible than others."[7]

### B. Heckman's FLSA Claim

Heckman claimed that Defendants improperly retaliated against him in violation of the Fair Labor Standards Act, 29 U.S.C.§ 215(a)(3) ("FLSA"). This provision of the statute forbids employers from:

> [D]ischarg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is

---

[4] FED. R. CIV. P. 50(a)(1).
[5] *Mulholland v. Government County of Berks, Pennsylvania*, 706 F.3d 227, 237 (3d Cir. 2013).
[6] *Rodriquez v. Southeastern Pennsylvania Transportation Authority*, 119 F.4th 296, 298 (3d Cir. 2024).
[7] *Rippee v. Grand Valley Manufacturing, Co.*, 762 F.2d 25, 26 (3d Cir. 1985).

about to testify in any such proceeding, or has served or is about to serve on an industry committee.⁸

To establish such a claim of discriminatory retaliation, "'a plaintiff must show that (1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against [him], and (3) there was a causal link between the plaintiff's protected action and the employer's adverse action.'"⁹

For the first element, Heckman must show that he engaged in "protected activity."¹⁰ As the statute describes, the provision of the FLSA at issue protects only employees who have "filed" a "complaint" regarding an employer's violation of the FLSA.¹¹ This has been interpreted to require a complaint to be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."¹² For a retaliation claim, a plaintiff need not prove an actual violation of the FLSA occurred,¹³ but must establish that "a reasonable employer could find that his complaint would fall under the scope of the FLSA's protection."¹⁴

---

⁸   29 U.S.C. § 215(a)(3).
⁹   *Kovach v. Turner Dairy Farms, Inc.*, 929 F. Supp. 2d 477, 499 (W.D. Pa. 2013) (quoting *Preobrazhenskaya v. Mercy Hall Infirmary*, 71 Fed. Appx. 936, 939 (3d Cir. 2003)).
¹⁰  *Kovach*, 929 F. Supp. 2d. at 499.
¹¹  29 U.S.C. § 215(a)(3).
¹²  *Kasten v. Saint-Gobain Perf. Plastics Corp.*, 563 U.S. 1, 14 (2011).
¹³  *Chouinard v. Perfection Snacks*, No. 22-3276, 2023 WL 4980939, at *4 (E.D. Pa. Aug. 3, 2023); *Eaton v. Commonwealth Health Sys., Inc.*, No. 3:20-CV-1596, 2021 WL 1893589, at *4 (M.D. Pa. May 11, 2021).
¹⁴  *Monroe v. J.H.O.C., Inc.*, No. 3:18-CV-00299, 2019 WL 2579238, at *4 (D. Conn. June 24, 2019). See also *Arrington v. Terrace*, No. 16-2599, 2016 WL 5899925, at *4 (E.D. Pa. Oct. 7, 2016) (requiring facts "which would allow a factfinder to conclude that a reasonable employer would have been on notice that Plaintiff was asserting rights under the FLSA"); *Childs v.*

The FLSA does not provide a federal vehicle to sue for mere breach of employment contract disputes; rather, the complaint must be of a larger nature, indicating to the employer that the plaintiff takes issue with the practices for being improper or prohibited under external authority.[15] "[I]t must be possible to discern from the context of the statement that the employee opposes an unlawful employment practice."[16] "[C]omplaints that a reprimand was undeserved, or of unfair treatment, or merely disagreeing with disciplinary practices, do not constitute protected activity."[17]

One practice prohibited under the FLSA, and the theory at issue in the instant case, is that of improper deductions from salaried workers' pay. "The FLSA provides that employers may not require employees to work more than forty hours per

---

*Universal Companies*, No. 15-3507, 2016 WL 1623159 at *4 (E.D. Pa. Apr. 22, 2016) (asking whether "a reasonable jury could find" that the complaints were "sufficiently clear assertions of rights protected by the FLSA" such that "a reasonable employer would have understood that [the plaintiff] was asserting rights protected by the FLSA").

[15] *Eaton v. Commonwealth Health Systems*, 631 F. Supp. 3d 236, 244 (M.D. Pa. 2022) ("the FLSA neither converts an employer's contract breach into a violation of federal law, nor generally federalizes disputes between employers and employees") (internal quotation omitted); *Monroe*, 2019 WL 2579238 at *5 ("There is no evidence, however, that [Plaintiff] ever complained that [Defendant's] practices with respect to his detention pay violated the FLSA or were otherwise illegal . . . . a reasonable employer would likely have viewed them simply as attempts to correct a discrete pay discrepancy issue, not accusations that Premier was violating the FLSA or otherwise engaging in illegal employment practices."); *cf Childs v. Universal Companies*, No. 15-3507, 2016 WL 1623159 at *4 (E.D. Pa. Apr. 22, 2016) (where the plaintiff complained of nonpayment of overtime specifically); *cf McGuckin v. Brandywine Realty Trust*, 185 F. Supp. 3d 600, 609 (E.D. Pa. 2016) (where an employee raised that his working without pay was "unlawful").

[16] *Braden v. Cnty. Of Wash.*, 749 F. Supp. 2d 299, 305 (W.D. Pa. 2010) (internal quotation omitted).

[17] *Id.*

workweek unless those employees receive overtime compensation at a rate of not less than one-and-a-half times their regular pay."[18] Certain classes of employees are exempted from the overtime-pay requirement, including employees who work in a "bona fide executive, administrative, or professional capacity."[19] Heckman falls within such an exemption. Nevertheless, "[a]n employer who makes improper deductions from [an exempted employee's] salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis."[20] An employee is paid on a "salary basis" where the employee receives consistent compensation "which amount is not subject to reduction because of variations in the quality or quantity of the work performed."[21] However, deductions are generally only improper where they impact the employee's salary, or base pay, not fringe benefits or bonus compensation.[22]

---

[18] *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 626 (6th Cir. 2009) (citing 29 U.S.C. § 207(a)(1)).
[19] 29 U.S.C. § 213(a)(1).
[20] 29 C.F.R § 541.603(a).
[21] 29 C.F.R § 541.602(a).
[22] 29 C.F.R § 541.604(a); *see also Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 759 (3d Cir. 2023); *Sander v. Light Action, Inc.*, 525 F. App'x 147, 151 (3d Cir. 2013); *Eaton*, 631 F. Supp. 3d at 244.

To note, there has been much consternation about whether Heckman's work at the Green Home qualified as improper deductions from his base salary. The Court need not decide whether this actually was a violation of the FLSA, as the underlying claim need not be proven to make actions retaliatory. *Eaton*, 2021 WL 1893589, at *4. This evidence is relevant, though, to determining the nature and content of Dr. Heckman's complaints to his employers, as Dr. Heckman's theory of recovery has focused on complaints about improper deductions. It is clear to the Court that Heckman brought no such theory to the attention of his superiors, nor any general inclination of federal wage law violations, and, thus, engaged in no protected activity.

Putting this together, for the first element of protected activity, Heckman needed to prove that he filed a complaint putting Defendants on notice that he believed that some provision of the FLSA may have been violated. His complaint must have been sufficiently clear for a reasonable employer to understand that Heckman was asserting rights protected by the FLSA and calling for the FLSA's protection as opposed to simply demanding his pay according to his contract.[23]

Heckman has not provided evidence supporting the first element such that any reasonable jury could find in his favor.[24] Indeed, Heckman has presented no evidence that he engaged in an activity protected under the FLSA. From his opening statement, Heckman's case focused on evidence relating to his purported whistleblowing actions concerning North Penn's FQHC status and OBGYN practice.[25] That evidence does nothing to meet the elements of his FLSA claim.[26]

---

[23] *Kasten*, 563 U.S. at 13-14; *supra* note 15.

[24] FED. R. CIV. P. 50(a)(1).

[25] The brunt of this evidence was related to Heckman's already dismissed claims, such as those claims brought under the False Claims Act and Pennsylvania Whistleblower Law. *See* Doc. 173 (Memo.). Heckman's counsel has repeatedly mentioned a "snowball" effect where all this evidence compounded into his firing. Such a "snowball" would hurt, rather than help, Heckman's theory, as the evidence of other reasons for his firing would attenuate any causal link between a protected activity *under the FLSA* and his firing. Regardless, Heckman has presented no evidence that the "snowball" included a "snowflake" complaint invoking federal rights under the FLSA and, therefore, no protected activity has been shown. The Court will not allow Heckman to essentially re-litigate all of his dismissed claims under the guise of an FLSA claim.

[26] The Court allowed such evidence because, in the pretrial conference, Heckman indicated he would be presenting it as part of his affirmative defense related to North Penn's breach of contract counterclaim. That breach of counterclaim required Heckman to prove North Penn "wrongfully" prevented him from fulfilling a condition precedent. However, that evidence is *not* relevant to Heckman's FLSA claim.

Indeed, Heckman has not presented any evidence that his complaints to his employers about his wages were anything but ordinary contractual disputes, which is unprotected under the FLSA. To the contrary, when reviewing the evidence, including emails Heckman sent which he purported demonstrate his protected activity, the *only* conclusion possible is that Heckman raised contract disputes about his lack of pay at the Green Home.[27]

Regardless of any subjectively held belief Heckman may have had about FLSA violations, Heckman presented no evidence of any complaint which would indicate to a reasonable employer that his complaints were invoking the scope of the FLSA's protection. That is fatal. There can be no retaliation under the FLSA by an employer when an employee has done nothing to indicate to his employer that he

---

[27] *See* Plaintiff's Exhibit 1 ("PX1") at 4 ("… some of the *contract* issues we need to discuss") (emphasis added); at 3 ("I have not received *contractual* payments") (emphasis added); at 2 ("…*contractual* payments for medical directorship services in long term care were again not paid this month"); PX35 at 1 ("mostly *contract* stuff") at 2 ("my concern is we are voiding my contract"); DX264 (a note to self, explaining his needs, which includes a variety of organizational disputes including, but not limited to, the OBGYN practice, but nowhere noting any type of federal wage dispute claim or belief of improper withholdings from his salary). Janie Hilfiger also testified, by Heckman's counsel's own direct examination, that she believed Heckman was discharged because of his views about OBGYN services.

While Dr. Heckman complained about not being paid, he nowhere complained about payment of overtime specifically or raised federal entitlements to pay besides his contract. *Cf Childs v. Universal Companies*, No. 15-3507, 2016 WL 1623159 at *4 (E.D. Pa. Apr. 22, 2016) (where the plaintiff complained of nonpayment of overtime specifically). Specifically, in oral argument, Dr. Heckman asserted an alternative theory that the missed payments could be a failure to pay Dr. Heckman the minimum wage, which is also an FLSA violation. This argument itself illustrates why Dr. Heckman's theory must fail. It is not the underlying violation at issue, but rather what Dr. Heckman complained about to his supervisors. Were the complaints sufficiently clear to put a reasonable employer on notice of an FLSA violation, post-hoc attempts to change the characterization of such a complaint would not be successful.

believes his rights, as opposed to his contractual entitlements, have been violated. This is not a matter of credibility, or weight; rather it is merely a question of whether sufficient evidence has been presented to allow a reasonable jury to make a determination in favor of Heckman. No evidence of a protected activity, let alone sufficient evidence for a reasonable jury to conclude as much, has been presented.

Turning to the last two elements of FLSA, Heckman's claim also fails on the third element of causation. Heckman has established the second element, that he was fired, which is an adverse employment action.[28] However, because Heckman has not established the requisite protected activity, "the element of causation is necessarily lacking as well."[29]

Additionally, because the element of protected activity is shared for both claims against Defendants North Penn and UPMC Wellsboro, this ruling serves to award judgment on all Heckman's FLSA claims against both Defendants.

---

[28] *Abramson v. Williamson Paterson College of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001).
[29] *Wilson v. Columbia Gas of Pa.*, 676 F. Supp. 3d 424, 438 (W.D. Pa. 2023).

## III.  CONCLUSION

Defendants' motions for Judgment as a Matter of Law under Rule 50(a) are granted. Judgment is entered in favor for Defendants North Penn and UPMC Wellsboro, and Heckman's FLSA claims are dismissed. Trial may proceed on North Penn's breach of contract dispute and Heckman's affirmative defenses.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge